**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 13-cv-0336-WJM-CBS

ReFX AUDIO SOFTWARE INC.,

      Plaintiff,

v.

DOES 1-82,

      Defendants.

---

**ORDER FINDING JOINDER IMPROPER AND DISMISSING WITHOUT**
**PREJUDICE ALL DEFENDANTS OTHER THAN JOHN DOE 1**

---

      On February 7, 2013, Plaintiff reFX Audio Software, Inc. ("Plaintiff") initiated this

action against John Does 1-82[1] alleging that Defendants unlawfully downloaded a

portion of Plaintiff's copyrighted software. (Compl. (ECF No. 1) ¶¶ 10-12.) Having

reviewed the Complaint, the Court *sua sponte* finds that joinder of all the named

Defendants was not proper and dismisses the claims against John Doe Defendants 2-

82 without prejudice to refiling separate cases against each Defendant accompanied by

payment of a separate filing fee as to each case.

**I. LEGAL STANDARD**

      Permissive joinder of claims is governed by Federal Rule of Civil Procedure 20,

which provides that persons may be joined as defendants if:

---

[1] Defendants are known to Plaintiff only by their IP address. (Compl. ¶ 26.)

(A)   any right to relief is asserted against them jointly,
severally, or in the alternative with respect to or
arising out of the same transaction, occurrence, or
series of transactions or occurrences; and

(B)   any question of law or fact common to all defendants
will arise in the action.

The remedy for improper joinder of parties is not dismissal of the action.  Fed. R. Civ. P.

21.  Rather, the court may "at any time, on just terms, add or drop a party.  The court

may also sever any claim against a party."  *Id.*

## II.  FACTUAL BACKGROUND

Plaintiff reFX Audio Software, Inc. is a Canadian corporation that produces,

markets, and sells sound mixing software.  (Compl. ¶ 20.)  Plaintiff holds the copyrights

to Nexus 2.2.0, the Nexus Bass Expansion Pack and the Nexus Minimal House 2

Expansion Pack (the "Works").  (*Id.* ¶ 5.)  At some point, Plaintiff learned that the Works

were being unlawfully downloaded using a computer protocol called BitTorrent[2] and

retained a company to investigate.  During the course of this investigation, the company

identified eighty-two IP addresses in the District of Colorado that had downloaded a file

with the hash number[3] 1DCAAFEA46753AF5A83ACBFD9022762138E5CDBD ("Hash

Number"), which has been associated with the Works.  These eighty-two IP addresses

were allegedly assigned to the eighty-two John Doe Defendants at the time this file was

downloaded.  (ECF No.1-1.)

---

[2]  BitTorrent is a computer protocol that works with computer software to break large
files, such as movies, into smaller files for the purpose of speeding up and easing download.
(Compl. ¶¶ 9-15.)

[3]  BitTorrent assigns each smaller piece of copyrighted work a unique identifier which is
commonly referred to as a "hash".  (Compl. ¶ 10.)

## III.  ANALYSIS

This case is part of an "outbreak of similar litigation . . . around the country in which copyright holders have attempted to assert claims against multiple unknown defendants by joining them, in often large numbers, into a single action." *Raw Films, Inc. v. Does 1-32*, 2011 WL 6840590, *1 (N.D. Ga. Dec. 29, 2011).  Like the plaintiffs in the other cases, reFX Audio Software claims that the Defendants here participated in the same BitTorrent "swarm" for the purpose of unlawfully downloading Plaintiff's copyrighted Works.  The BitTorrent swarm process has been described as follows:

> In the BitTorrent vernacular, individual downloaders/ distributors of a particular file are called "peers."  The group of peers involved in downloading/distributing a particular file is called a "swarm."  A server which stores a list of peers in a swarm is called a "tracker."  A computer program that implements the BitTorrent protocol is called a BitTorrent "client."
>
> The BitTorrent protocol operates as follows.  First, a user locates a small "torrent" file.  This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution.  Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file.  Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm.  When the download is complete, the BitTorrent client continues distributing data to the peers in the swarm until the user manually disconnects form the swarm or the BitTorrent client otherwise does the same.

*Diabolic Video Prods., Inc. v. Does 1-2099*, 2011 WL 3100404, *2 (N.D. Cal. May 31, 2011).  The theory behind this "swarm joinder" is that "when each defendant is one of many users simultaneously uploading and downloading a protected work, the defendant

acts as part of a 'swarm' in a 'series of transactions' involving 'common questions of law and fact.'"  *Raw Films*, 2011 WL 6840590, at *1.

Courts across the country are split on whether this theory of swarm joinder is appropriate.  A number of courts, including one judge in this District, have held that joinder is appropriate.  *See Patrick Collins, Inc. v. John Does 1-15*, 2012 WL 415436 (D. Colo. Feb. 8, 2012) (finding joinder appropriate); *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. 2012) ("it is difficult to see how the sharing and downloading activity [of individuals using the BitTorrent protocol in the same swarm] could not constitute a 'series of transactions or occurrences' for purposes of Rule 20(a)."); *MGCIP v. Does 1–316*, 2011 WL 2292958, at *2 (N.D. Ill. June 9, 2011) ("[G]iven the decentralized nature of BitTorrent's file-sharing protocol—where individual users distribute the same work's data directly to one another without going through a central server—the Court finds that sufficient facts have been plead to support the joinder of the putative defendants at this time.").

However, a growing number of district courts have recently held that swarm joinder is not appropriate.  *See, e.g., Malibu Media, LLC v. John Does 1-23*, 2012 WL 1999640, *4 (E.D. Va. May 30, 2012) (finding that, in a file sharing case, "a plaintiff must allege facts that permit the court at least to infer some actual, concerted exchange of data between those defendants."); *Digital Sins, Inc. v. John Does 1-245*, 2012 WL 1744838, *2 (S.D.N.Y. May 15, 2012) (finding no concerted action between defendants that only utilized the same computer protocol to download a file); *SBO Pictures, Inc. v. Does 1–3036*, 2011 WL 6002620, *3 (N.D. Cal. Nov. 30, 2011) ("The Court cannot

conclude that a Doe Defendant who allegedly downloaded or uploaded a portion of the Motion Picture on May 11, 2011 [and] a Doe Defendant who allegedly did the same on August 10, 2011 . . . were engaged in the single transaction or series of closely-related transactions recognized under Rule 20."); *Lightspeed v. Does 1-1000*, 2011 U.S. Dist. LEXIS 35392, *4-7 (N.D. Ill. Mar. 31, 2011) (finding that Doe defendants using BitTorrent technology were misjoined on the basis that the putative defendants were not involved in the "same transaction, occurrence, or series of transactions or occurrence" under Fed. R. Civ. P. 20(a)(2)(A)).

Given the amount of discourse already produced by courts around the country on this issue, the Court finds it unnecessary to write a lengthy opinion about whether joinder is appropriate.  Rather, the Court explicitly adopts the reasoning set forth by Judge Claude Hilton in *Malibu Media, LLC v. John Does 1-23*, __ F.Supp.2d __, 2012 WL 1999640 (E.D. Va. May 30, 2012), Judge J. Frederick Motz in *Patrick Collins, Inc. v. Does 1-23*, 2012 WL 1144198 (D. Md. April 4, 2012), and Judge Joseph C. Spero in *Hard Drive Prods., Inc. v. Does 1-188*, 809 F.Supp.2d 1150 (N.D. Cal. 2011).  As Judge Spero wrote:

> Under the BitTorrent Protocol, it is not necessary that each of the Does 1-188 participated in or contributed to the downloading of each other's copies of the work at issue—or even participated in or contributed to the downloading by any of the Does 1-188.  Any "pieces" of the work copied or uploaded by any individual Doe may have gone to any other Doe or to any of the potentially thousands who participated in a given swarm.  The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world.

*Hard Drive Prods.*, 809 F.Supp.2d at 1163.  For the reasons set forth in these opinions, the Court finds that the Defendants in this action are not properly joined and that dismissal of Does 2-82 is appropriate.

Moreover, even if the Court had found joinder to be proper, it would sever the remaining Defendants pursuant to the Court's discretionary authority set forth in Federal Rules of Civil Procedure 20(b) and 21.  *Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1371 (10th Cir. 1998) (Rule 21 permits the district court "considerable discretion" to dismiss parties "on such terms as are just"); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (court may sever claims under Rule 20 if joinder would violate "fundamental fairness" or result in prejudice to either side).  Even when the specific requirements of Rule 20 are satisfied, the Court must consider whether permissive joinder "will comport with the principles of fundamental fairness" or cause undue prejudice to any party.  *Desert Empire Bank v. Ins. Co. of N.A.*, 623 F.2d 1371, 1375 (9th Cir. 1980); *see also Intercon Research Assoc., Ltd. v. Dresser Indus.*, 696 F.2d 53, 58 (7th Cir. 1982) (permissive joinder should be denied where it would create undue prejudice, expense, or delay).  The Court finds that allowing this action to proceed against all the John Doe Defendants in one case would result in difficult case management, cause significant prejudice to Defendants, and would be fundamentally unfair.

First, as this and many other courts have previously recognized, though the nature of the alleged actions of each Defendant is similar in that they are accused of having utilized BitTorrent to unlawfully download Plaintiff's copyrighted Works, the

6

Defendants are likely to present very different defenses to these claims based on their individual circumstances.  *See PHE, Inc. v. Does 1-105*, 2013 WL 66506, at *3 (D. Colo. Jan. 4, 2013); *Malibu Media, LLC v. John Does 1-5*, 2012 WL 3030300, at *3 (D. Colo. July 25, 2012).  For example, "subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' Works.  John Does 3 through 203 could be thieves, just as Plaintiffs believe."  *Third Degree Films v. Does 1-3577*, 2011 WL 5374569, *4 (N.D. Cal. Nov. 4, 2011).  As this Court has previously noted, in the Bittorrent cases filed in this district:

> Some [defendants] are businesses alleging that a patron was the unlawful downloader.  Others are elderly grandparents that do not even know what BitTorrent is or how to download a file from the internet; they may have owned the computer associated with the unique IP address, but have no knowledge of whether someone in their household may have used the BitTorrent protocol for the purposes alleged in the complaint.

*See PHE, Inc.*, 2013 WL 66506, at *3; *Malibu Media*, 2012 WL 3030300, at *3.

The fact-intensive nature of these individualized defenses would require that the Court give individualized attention to each claim against each Defendant.  Therefore, the Court sees little, if any, judicial economy in allowing the claims to proceed together. *Digital Sins*, 2012 WL 1744838, *3 ("There are no litigation economies to be gained from trying what are in essence 245 different cases together, because each of the John Does is likely to have some individual defense to assert.  Each defendant's situation, which is unique to him or her, will have to be proved separately and independently.").

The Court also finds that Defendants are likely to be significantly prejudiced by

having to proceed in one action.  The only location data provided by Plaintiff is that all

eighty-two Defendants are located in Colorado.  Colorado is a large state with

significant physical barriers (*i.e.* the Rocky Mountains) to quick and easy transportation

within the state.  As one court has noted:

> even though they may be separated by many miles and
> have nothing in common other than the use of BitTorrent,
> each defendant must serve each other with all pleadings—a
> significant burden when, as here, many of the defendants
> will be appearing pro se and may not be e-filers.  Each
> defendant would have the right to be at each other
> defendant's deposition—creating a thoroughly
> unmanageable situation.  The courtroom proceedings would
> be unworkable—with each of the 188 Does having the
> opportunity to be present and address the court at each
> case management conference or other event.  Finally, each
> defendant's defense would, in effect, require a mini-trial.
> These burdens completely defeat any supposed benefit
> from the joinder of all Does in this case, and would
> substantially prejudice defendants and the administration of
> justice.

*Hard Drive Prods.*, 809 F.Supp.2d at 1164.  Aside from these general difficulties, this

Court's local rules also require conferral between the parties before filing any motion,

which would be difficult with multiple *pro se* parties.  D.C.Colo.LCivR 7.1A.  Thus, the

Court finds that Defendants would suffer significant prejudice if forced to litigate this

action as a group.

On the other hand, the Court finds that Plaintiff will suffer no undue prejudice by

severing the Defendants into separate cases.  Nothing in this Order prevents Plaintiff

from filing separate actions against each John Doe Defendant.  The statute of

limitations for a copyright infringement action is three years, which allows Plaintiff ample

time to refile the individual cases before the limitations period expires.  *See* 17 U.S.C. §

507. The only possible prejudice to Plaintiff is the cost of litigating each of these cases individually. However, requiring Plaintiff to pay a separate filing fee for each action is not *undue* prejudice. As previously stated, because many of these Defendants are likely to assert fact-intensive defenses that are particular to his or her individual circumstances, each multi-defendant case is likely to devolve into its own mini-litigation. Therefore, payment of a separate filing fee for its claim against each Defendant properly balances the Plaintiff's right to protect its copyright with the Court's interest in cost-efficient adjudication of cases.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's claims against John Doe Defendants 2-82 are DISMISSED WITHOUT PREJUDICE;

2. The parties and the Clerk shall omit any reference to John Doe Defendants 2-82 from any future filing in this action.

Dated this 11th day of February, 2013.

BY THE COURT:

William J. Martinez
United States District Judge

9